# Kurz Estate

Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, J.J.

*John F. Thaete*, for exceptant.

*Herbert W. Salus, Jr.*, Special Assistant Attorney General, contra.

KLEIN, P. J., March 6, 1964.—Ida M. Kurz, a resident of Philadelphia, died intestate in 1958. By adjudication of Shoyer, J., dated December 17, 1959, a one-eighth share of the estate, amounting to approximately $4,500, was awarded to Hermine Matuska, a resident of Czechoslovakia, to be retained by the accountant for further accounting. A second account was filed May 3, 1961. Following the filing of the first adjudication, Hermine Matuska went to Vienna, Austria, for a visit and while there she executed an assignment before the

United States Consul, of her share in this estate, in favor of her niece, Edith Hampel, a resident of Vienna.

Bolger, J., the auditing judge, refused to recognize the validity of the assignment made by the Czechoslovakian national and awarded the fund to the Commonwealth of Pennsylvania, without escheat, pursuant to section 737 of the Fiduciaries Act of April 18, 1949, P. L. 512.

Exceptions to this award are before us for consideration.

Prior to the argument before the court en banc, a stipulation of counsel was filed agreeing that if the funds were distributed to Hermine Matuska in Czechoslovakia, she would not have the full benefit, use, control and enjoyment thereof. We would take judicial notice of this fact, in any event, however. See Belemecich Estate, 411 Pa. 506 (1963)[1].

We believe the conclusions of the auditing judge were correct.

Counsel for the assignee relies, in a large measure, upon Menkovskaya Estate, 10 Fiduc. Rep. 510 (1960), but we are in full agreement with the auditing judge that the case is inapposite. There the award was made primarily in satisfaction of an admitted claim for services presented by the claimant in an amount greater than the distributive balance in the estate. The assignment from the daughter in Russia was wholly superfluous under the circumstances and what was said with respect thereto was clearly obiter dictum.

New York, which has a statute similar to ours, appears to be the only State in which this precise question has been passed upon by the appellate courts. In In re Geiger, 7 N. Y. 2d 109, 164 N. E. 2d 99, (1959), the court said:

"So long as the distributive shares are properly

---

[1] Reversed by the United States Supreme Court on other grounds.

being withheld by the Surrogate because of the special circumstances in which the beneficiaries find themselves as domiciliaries in an iron-curtain country they are in no position presently to assign any part of the funds withheld."

A similar question arose in Marek Estate, 11 N. Y. 2d 740 (1962), in which the court of appeals affirmed a decision of the Surrogate Court of Bronx County, refusing to recognize an assignment by a foreign national, residing in Czechoslovakia, of her distributive share of the estate of a New York decedent which had been deposited with the city treasurer, pursuant to section 269 of the Surrogate Court Act, because it appeared improbable to the surrogate that she would have the beneficial use and enjoyment of the money. An appeal was taken to the United States Supreme Court which was dismissed for want of a substantial Federal question in a per curiam order, sub nom. Ioannou v. New York, 371 U. S. 30 (1962).

This decision appeared to have laid to rest any doubts which existed concerning the constitutionality of custodial statutes such as have been enacted in Pennsylvania and New York. However, the question of the validity of these statutes was revived[2] the following year with the reversal by the United States Supreme Court of Belemecich Estate, 411 Pa. 506 (1963), in which the Pennsylvania Supreme Court held that our 1953 statute was not inconsistent with an 1881 treaty made by the United States with the Kingdom of Serbia, now the Republic of Yugoslavia, since the act guarantees "that the beneficiaries will actually and not technically or figuratively receive the amounts due them." Kolovrat v. Oregon, 366 U. S. 187 (1961), was distinguished by our Supreme Court on the ground that the

---

[2] See the informative and scholarly article, entitled "Distribution—'Iron Curtain Act'—Effect of Treaties": Fiduciary Review, February, 1964.

Pennsylvania statute is custodial in nature and not confiscatory, as is the Oregon statute. On appeal, the United States Supreme Court reversed in a cryptic per curiam order which read:

"The petition for writ of certiorari is granted and the judgment is reversed. Kolovrat v. Oregon, 366 U. S. 187."

It may appear difficult at first glance to reconcile Ioannou with Belemecich. However, a careful study of the cases readily resolves the uncertainty.

A State statute which conflicts with a treaty entered into by the United States with another nation must give way to the treaty by reason of the superior right of the national government to conduct the nation's foreign affairs. See Clark, Attorney General v. Allen, 331 U. S. 503 (1947). The sole question involved in the Belemecich appeal to the United States Supreme Court was whether the State court's refusal to award the distributive balance of the estate to the Yugoslavian national was in violation of the provisions of the treaty of 1881 between the United States and Serbia. The Supreme Court ruled that the treaty was still in effect with the government of Yugoslavia, as successor to Serbia, and, consequently, that the Pennsylvania statute was invalid as it affects nationals of Yugoslavia. This was in accord with the ruling in Kolovrat v. Oregon, supra. The nature of the state statute, i.e., whether it was confiscatory or custodial, was not at issue.

Our inquiry has disclosed that there are no treaties or other agreements in effect at this time between the United States and Czechoslovakia dealing with the rights of citizens of one country to inherit and receive property in the other. Hence, relying upon Ioannou, in which a resident of Czechoslovakia was also involved, we must conclude that the Pennsylvania statute is valid and effective as it applies to nationals of Czecho-

slovakia and the other Iron-curtain countries with which the United States has no treaties on the subject.

In the absence of pertinent treaty provisions, the administration of the estates of decedents is a matter within the jurisdiction of the various States. State courts having funds distributable to beneficiaries abroad are the appropriate tribunals in which to determine whether, in accordance with State law, distribution should be made and, if so, what procedures should be adopted to insure receipt of the distributive shares by the persons entitled thereto.

Section 737, which was added to the Fiduciaries Act of 1949 in 1956, Act of February 23, 1956, P. L. 1084, and is substantially a reenactment of the Act of July 28, 1953, P. L. 674, authorizing the courts to withhold distribution of the share of a beneficiary who "would not have the actual benefit, use, enjoyment or control of the money or other property distributed to him", was not intended by the legislature as a means of producing revenues for the Commonwealth. It was designated as a benevolent, custodial measure to safeguard the interests of the heirs of Pennsylvania decedents who reside in countries under dictatorial domination, where their inheritances would be in danger of being confiscated by the foreign government.

We are in accord with the following statement made by Judge Bolger in the adjudication:

"There is no doubt that if this assignment is recognized as valid, it will create a pattern for the evasion of the restrictions on such distributions and the deviousness of Russian or satellite governments will quickly adopt such a pattern and deprive beneficiaries within their boundaries of their rightful inheritance." For an interesting discussion of this subject, generally, see In re Perlinsky's Estate, 115 N. Y. S. 2d 549 (1952).

We are satisfied from a study of the record in this case that Hermine Matuska, entrapped in Communist-

dominated Czechoslovakia, was convinced that she could never receive the actual benefit, use, enjoyment or control of her share of this estate and made the assignment in question as a device to circumvent the provisions of our statute. She is, in fact, attempting to appoint her niece in free Vienna custodian of the fund. This we will not permit, as it would, in effect, be surrendering to the niece, the "power and authority" invested in this court by the legislature. It is for this court, and only this court, to decide when, how and under what circumstances, awards shall be distributed to nonresident beneficiaries who, the court believes, would not have the actual benefit, use, enjoyment or control of the money or property if forwarded to them at this time. Cases may arise in which, by reason of unusual and special circumstances, we might recognize assignments made by nationals of countries to whom we would not permit direct transmittal of money or other property. This, however, is not such a case.

The exceptions are, therefore, dismissed and the adjudication confirmed absolutely.